In the United States District Court
Northern District of Texas
Dallas Division

| | |
|---|---|
| MHSH Holdings, LLC, DFW Group 4 Investments, LLC, JST VB Proceeds, LLC, and Brezan Lewisville Holdings, LLC, <br><br>    Plaintiffs, <br> v. <br><br> Certain UWs at Lloyd's/MSF Pritchard Syndicate 318, Endurance Worldwide Insurance Limited, Scottsdale Insurance Company, Aspen Insurance UK Limited, and XL/Indian Harbor Insurance Company, <br><br>    Defendants. | Civil Action No: _____ <br><br> Jury Demand |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs MHSH Holdings, LLC, DFW Group 4 Investments, LLC, JST VB Proceeds, LLC, and Brezan Lewisville Holdings, LLC file this Original Complaint against Defendants Certain UWs at Lloyd's/MSF Pritchard Syndicate 318, Endurance Worldwide Insurance Limited, Scottsdale Insurance Company, Aspen Insurance UK Limited, and XL/Indian Harbor Insurance Company.

### INTRODUCTION

1. This lawsuit arises out of a hail storm event which caused substantial damage to the property commonly referred to as Lakeside 121 and located at 701 Leora Lane, The Colony, Texas 75056 (the "Property"). The Property is a Class A,

multifamily apartment complex consisting of 10 separate buildings. Plaintiffs are tenants-in-common with respect to the Property; meaning, each of the Plaintiffs hold record title of ownership in the Property, together.

2. Defendants share the limits of liability among themselves for covered losses under the master policy at issue. At all times pertinent to this lawsuit, Plaintiffs collectively owned the Property and were insureds under a master policy with Defendants, who at all times relevant, were collectively the insurers.

## PARTIES

3. Plaintiffs MHSH Holdings, LLC, DFW Group 4 Investments, LLC, JST VB Proceeds, LLC, and Brezan Lewisville Holdings, LLC are Delaware limited liability companies. Plaintiffs' respective members are all citizens of New Jersey. Plaintiffs are represented by the undersigned counsel.

4. Defendant Certain UWs at Lloyd's/MSF Pritchard Syndicate 318 (Policy No. PG1600248) are citizens and/or subjects of a foreign country and/or states other than Plaintiffs. Defendant may be served with process through its counsel who has agreed to accept the same: Stephen R. Wedemeyer and Matthew A. Foytlin, SHACKELFORD LLP, 717 Texas Avenue, 27th Floor, Houston, Texas 77002.

5. Defendant Endurance Worldwide Insurance Limited (Policy No. PG1600792) are citizens and/or subjects of a foreign country and/or states other than Plaintiffs. Defendant may be served with process through its counsel who has agreed to accept the same: Stephen R. Wedemeyer and Matthew A. Foytlin, SHACKELFORD LLP, 717 Texas Avenue, 27th Floor, Houston, Texas 77002.

6. Defendant Scottsdale Insurance Company (Policy No. AFS0000218) are citizens and/or subjects of a foreign country and/or states other than Plaintiffs. Defendant may be served with process through its counsel who has agreed to accept the same: Stephen R. Wedemeyer and Matthew A. Foytlin, SHACKELFORD LLP, 717 Texas Avenue, 27th Floor, Houston, Texas 77002.

7. Defendant Aspen Insurance UK Limited (Policy No. PRAGF4W16) are citizens and/or subjects of a foreign country and/or states other than Plaintiffs. Defendant may be served with process through its counsel who has agreed to accept the same: Stephen R. Wedemeyer and Matthew A. Foytlin, SHACKELFORD LLP, 717 Texas Avenue, 27th Floor, Houston, Texas 77002.

8. Defendant XL/Indian Harbor Insurance Company (Policy No. PR004110603) are citizens and/or subjects of a foreign country and/or states other than Plaintiffs. Defendant may be served with process through its counsel who has agreed to accept the same: Stephen R. Wedemeyer and Matthew A. Foytlin, SHACKELFORD LLP, 717 Texas Avenue, 27th Floor, Houston, Texas 77002.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. §1332(a).

10. Venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred, and the property that is the subject of this action is located, in this judicial district.

## FACTUAL BACKGROUND

### A. The hail storm event and initial estimate from Defendants.

11. Plaintiffs are the owners of an All Risk Master Insurance Policy (Master Policy No. ARP16055), under which Defendants share the covered losses as collective carriers (the "Policy"). The Policy covers the Property, which is owned by Plaintiffs as tenants-in-common.

12. On or about April 21, 2017, a hail storm event caused substantial damage to the Property. Thereafter, Plaintiffs opened a claim under their Policy. Defendants engaged Lynn Summers and Mike Fink of Engle Martin & Associates (collectively, "Engle Martin") to adjust the claim.[1] Engle Martin initially inspected the Property in June 2017, noting damage to interior units, the detached garage roofs, carports, roofs, gutters, downspouts, hardie board siding, and other areas on the Property's exterior.

13. At the time of this initial meeting, a representative of Plaintiffs met with Engle Martin and began discussing the scope of damage to the Property, as observed. Plaintiffs were contemplating hiring a public adjuster given the breadth of damage involved and initial estimates received in the range of $2.5MM and $3MM. Engle Martin advised Plaintiffs to wait until Defendants were able to adjust the claim before taking that measure, in case Plaintiffs would be satisfied with Defendants'

---

[1] Defendants provided written notice to Plaintiffs that they intend to accept liability for Engle Martin and its individual adjusters that handled the claim – including Mike Fink and Lynn Summers – pursuant to Texas Insurance Code §542A.006. Accordingly, neither Engle Martin nor the individual adjusters are named Defendants in this lawsuit, with all their acts constituting acts of Defendants.

position on coverage. And if not, a public adjuster could be brought on at that point to provide a competing scope, if necessary.

14. Thereafter, Engle Martin commissioned a report by Rick Chaka of J.S. Held (the "J.S. Held Report"), which estimated the repairs to total $608,876.71. Based on Defendants' calculation of the deductible for the claim, Defendants issued payment to Plaintiffs in the amount of $50,017.15.

15. It is undisputed that the hail storm event is a covered loss under the Policy. Despite repeated demands and supplemental information provided by Plaintiffs, Defendants continue to wrongfully underpay and partially deny Plaintiffs' claim, depriving them of a full and fair payment for the covered loss at issue. The outstanding matters of coverage and at issue in this lawsuit are discussed below.

### B. Coverage for temporary repairs.

16. It is undisputed that expenses incurred for "temporary repairs" are covered under the Policy. Indeed, immediately after the hail storm event, Plaintiffs undertook temporary repairs that included, among other things, tarping on the roof. Defendants accepted this claim for temporary repairs which totaled $4,316.60. Yet, Defendants refused to cover other temporary repairs performed by Plaintiffs, likely because the amounts incurred were far more substantial.

17. Specifically, given the staggering difference between the estimates in the J.S. Held Report and initial estimates provided to Plaintiffs, Plaintiffs took further measures to protect against loss by implementing additional temporary repairs at the Property since Plaintiffs were unsure of when – and if ever –

Defendants intended to properly pay on the claim. This included installation of a temporary roof on the Property to protect the interior units from further damage during rain events and to mitigate against further business interruption losses by virtue of losing tenants. Plaintiffs incurred a total cost of $348,500 for this temporary repair.

18. Defendants refused to cover this cost, claiming the temporary roof was permanent in nature, and therefore, not a covered temporary repair under the Policy. Defendants have refused to come down from this position despite receiving opinions from roofers in the North Texas area who inspected the temporary roof and concluded its non-permanent status.

19. Defendants' position regarding the temporary roof seriously brings their motives into the forefront. Reason being, under the Policy, "temporary repairs" (which is not defined) are covered under the Policy if the "expenses were incurred for the purpose of reducing any loss under the [P]olicy." The same tarping repairs that Defendants accepted as a covered temporary repair were determined – in Defendants' own J.S. Held Report – to be inadequate to protect the buildings from further interior damage and business interruption loss, given the missing shingles and exposed decking observed through the roof of the Property after the hail storm.

20. So, by virtue of accepting coverage for tarping as a "temporary repair" and denying coverage for the temporary roof as a "permanent repair," Defendants have taken the position that the only cognizable temporary repair to mitigate against further loss was something that did not, in fact, mitigate against further loss.

21. The Property is a Class A multifamily complex that could not continue to apply and reapply ineffective tarp on the roof and still expect to attract tenants with these exterior eyesores and drenched interior dwellings. The only reasonable temporary repair that Plaintiffs could have performed while Defendants investigated the claim was the very measure Plaintiffs eventually took.

### C. Inadequate investigation of claim and scope of repairs.

22. After receiving the J.S. Held Report, Plaintiffs provided Defendants with numerous additional estimates which ranged from $1.9MM to $3.5MM for the appropriate work necessary to return the Property to its pre-loss condition. The reason for such disparity between Defendants' J.S. Held Report and Plaintiffs' subsequent reports was not attributable to the cost of performing the work in the J.S. Held Report. Rather, it was the scope of work, itself.

23. Specifically, there were considerable differences between the actual scope of work contained in the J.S. Held Report and estimates provided by Plaintiffs, largely including repairs to exterior items. Engle Martin readily acknowledged this fact.

24. Instead of investigating the propriety of the scope contained the in J.S. Held Report, Engle Martin rejected the competing estimates provided by Plaintiffs based on J.S. Held's review of those very estimates – and nothing more. It belies logic for Defendants to claim that a good-faith investigation into the claim occurred when the only basis for rejecting the competing estimates is to point to the opinion of the building consultant hired by Engle Martin, who coincidentally, also provided the

anomaly of all estimates exchanged to date. This is tantamount to allowing Defendants' hired consultant – Mr. Chaka of J.S. Held – to be the arbiter of what constituted the proper scope or work for physical damage to the Property.

25. Each and every subsequent estimate provided by Defendants since receiving Plaintiffs' competing estimates all reference and adhere to the scope provided in the J.S. Held Report – without consideration of any additional work that may be necessary. That is, Defendants provided estimates from contractors – riddled with contingencies and reservations which would lead to increased costs, no less – which were proffered to substantiate their "good faith investigation" into the matter and reasonableness of costs estimated in the J.S. Held Report. But, if there is a fundamental disagreement on scope, what good is it to provide estimates based on an improper scope? No good whatsoever. Defendants' proposals based on a

26. Defendants' proposals based on a disputed scope is of no significance or consequence. Rather than performing an "investigation" into the claim and proper scope of property damage, Defendants have, in actuality, engaged in efforts to "corroborate" their inadequate estimate of property damage.

### D. Other issues.

27. Defendants also attempt to circumvent the Policy's "one loss, one deducible" provision by claiming a deductible for each of the 10 buildings applies to the claim "jointly." However, this interpretation and application is not supported by the words of the Policy. And in fact, Defendants, themselves, acknowledge a misapplication of the appropriate deductible when they calculated the total

$50,017.15. Despite repeated requests for Defendants' interpretation of the deductible under the language of the Policy, including their initial and self-described misapplication, Defendants have failed to provide any explanation.

28. The net difference between the competing deductible interpretation is substantial, to say the least. Under the terms of the Policy, the deductible for Plaintiffs' claim should be $25,000.00. Defendants have taken the position that the deductible – based on their inaccurate interpretation of the Policy – is $586,800.00.

29. Finally, the Policy provides for business interruption losses stemming from a covered loss. Despite this coverage, Defendants, to date, have not paid any amounts demanded by Plaintiffs for their business interruption losses. Plaintiffs' business interruption losses arise out of lost tenancy at this multifamily apartment complex.

## CAUSES OF ACTION

### A. Count One: Violations of the Texas Insurance Code.

30. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

31. Defendants' conduct constitutes multiple violations of Section 542.060 of the Texas Insurance Code. All violations under this section are made actionable by Section 541.151 of the Texas Insurance Code.

32. Defendants' unfair settlement practices, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue,

constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(1).

33. The unfair settlement practice of Defendants as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis on the policies, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiff's claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(4).

34. Defendants' unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(7).

35. Defendants' noncompliance with the Texas Insurance Code entitles Plaintiffs to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, and attorneys' fees. For knowing conduct of the acts complained of, Plaintiffs ask for three times its actual damages. TEX. INS. CODE §541.152.

### B. Count Two: Breach of Contract.

36. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

37. Defendants are liable to Plaintiffs for intentional breach of the Policy due to their conduct. Plaintiffs performed under the Policy by virtue of timely and completely paying the premium requested by Defendants in exchange for the Policy.

38. Defendants breached the terms of the Policy by failing and refusing, as described above, to pay adequate compensation as they are obligated to do under the Policy.

39. Based on Defendants' breach, Plaintiffs are entitled to regain the benefit of their bargain under the Policy, which is the amount of its claim, together with attorneys' fees.

### C. Count Three: Breach of Duty of Good Faith and Fair Dealing.

40. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

41. Defendants' conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

42. Defendants' failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, Defendants' knew or should have known by the exercise of reasonable diligence that their liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

43. Defendants' breach of the common law duty of good faith and fair dealing entitles Plaintiffs to compensatory damages, including all forms of loss resulting from Defendants breach of that duty, such as additional costs, economic

hardship, losses due to nonpayment of the amount Plaintiffs are owed, exemplary damages, and damages for emotional distress.

### D. Count Four: Violation of the Texas Deceptive Trade Practices Act.

44. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

45. Defendants' conduct violated the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE Section 17.41, et seq., ("D.T.P.A.") by engaging in false, misleading, or deceptive acts and practices.

46. Each of the acts described above, together and singularly, constitutes a violation of the D.T.P.A., pursuant to the tie-in provision for Insurance Code Violations.

47. Plaintiffs were "consumers" in that Plaintiffs acquired the Policy by purchasing the same and that insurance contract forms the basis of this action. Defendants violated the D.T.P.A., in the following ways:

   a. Defendants misrepresented a material fact or policy provision relating to the coverage and deductible at issue;

   b. Defendants failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim with respect to which their liability became reasonably clear;

   c. Defendants refused to pay the claim without a reasonable investigation on their parts with respect to the claims;

   d. Defendants knowingly made false or misleading statements of fact concerning the need for repair at the Property; and

   e. Defendants' conduct constitutes unconscionable actions or courses of action.

48. Defendants are liable for its unfair and deceptive acts by performing an outcome-oriented investigation of Plaintiffs' claims, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' claim.

49. Each of the acts described above, together and singularly, constitutes a deceptive trade practice in violation. Plaintiffs relied on each of Defendants' acts to their detriment and each of these acts were the producing cause of Plaintiffs' damages.

50. Plaintiff has been damaged as a result of Defendants' deceptive trade practices in an amount equal to the costs of repairs, expenses incurred for temporary repairs, business interruption damages, and attorneys' fees and costs. Plaintiff also seeks treble damages from Defendants for knowing and intentional conduct.

## CONDITIONS PRECEDENT

51. All conditions precedent were satisfied prior to bringing this action.

## DEMAND FOR JURY TRIAL

52. Plaintiffs demand trial by jury as to all claims that may be tried to a jury.

## PRAYER

53. Plaintiffs respectfully request that upon a trial hereof, Plaintiffs recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, both as to actual damages, treble damages under the Texas Insurance Code and Deceptive Trade Practices Act, and all additional and consequential damages that may be found. In addition, Plaintiffs request the award

of attorneys' fees for the trial and any appeal of this case, for all costs of Court on its behalf expended, for pre- and post- judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which they may show themselves to be justly entitled.

Respectfully submitted,

**CHERRY PETERSEN LANDRY ALBERT LLP**

By: /s/ Kartik R. Singapura
    Kartik R. Singapura
    Texas Bar No. 24083863
    Email: ksingapura@cplalaw.com

8350 North Central Expressway, Suite 1500
Dallas, Texas 75206
Telephone:  214.265.7007
Facsimile:   214.265.7008

**Counsel for Plaintiffs.**